# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**STEVEN BROTHER,**

                    **Plaintiff,**

**-vs-**                                     **Case No.  6:03-cv-444-Orl-28DAB**

**INTERNATIONAL BEACH CLUB
CONDOMINIUM ASSOCIATION, INC.,
JOHN A. SCHOBERT,**

                    **Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

       This cause came on for consideration without oral argument on the following motion filed

herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S VERIFIED APPLICATION FOR FINAL JUDGMENT FOR ATTORNEY AND EXPERT FEES, LITIGATION EXPENSES, AND COSTS (Doc. No. 80)** |
| **FILED:** | **October 20, 2004** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED** in part and **DENIED** in part.

### BACKGROUND

       On April 11, 2003, Plaintiff filed an action against Defendants International Beach Club

Condominium Association, Inc. (herein "the Association"), and John A. Schobert, alleging violations

of Title III of the Americans with Disabilities Act ("the ADA") relating to the premises "owned,

leased to or by, and/or operated" by the Defendants, including "a hotel containing numerous guest rooms, McCormick's Pub and other related public facilities." (Complaint at 4). The gravamen of the Complaint is that "those guest rooms, the pub and other public facilities" are inaccessible to individuals with disabilities. *Id.* In its motion to dismiss, the Association averred that, other than the Pub, the guest rooms, pool area and other related grounds were not places of public accommodation owned or operated by the Association (Doc. No. 8). The Court denied the motion, without prejudice to re-assertion as a motion for summary judgment (Doc. No. 17). The Association then answered the Complaint, again denying that it owned or operated the rooms. On December 24, 2003, the Association served an Offer of Judgment on Plaintiff (herein "the Offer").

On January 2, 2004, the Association filed a motion for partial summary judgment, again claiming that it did not own or operate the rooms (Doc. No. 35). On January 5, 2004, Plaintiff accepted the Association's Offer (Doc. No. 37), which included modifications to some of the public areas of the facilities, but no modifications to any guest rooms. On April 26, 2004, *nunc pro tunc* to January 9, 2004, judgment was entered in favor of the plaintiff pursuant to the Association's Offer of Judgment.

As the Offer was tendered on behalf of the Association only, the case proceeded against co-Defendant Schobert, culminating in a notice of settlement filed on October 7, 2004 (Doc. No. 78). The Court dismissed the case with prejudice on October 12, 2004 (Doc. No. 79). The instant motion seeking fees, expenses and costs against the Association only, followed.

Plaintiff has filed his Application, inexplicably, in fifteen separate parts (Doc. No. 80).[1]

Additionally, Plaintiff has filed an Affidavit of Daniel N. Brodersen (Doc. No. 82). The Association

has filed its Response (Doc. No. 85). The parties have each filed a Notice of Supplemental Authority

(Doc. Nos. 86 and 88), which are of limited assistance. The matter is now ripe for review.

### ISSUES AND ANALYSIS

Plaintiff claims entitlement to all attorney's fees, costs and litigation expenses (including

expert witness fees and related costs), pursuant to Section R of the Offer of Judgment, which provides:

> Defendant shall pay plaintiff for his accrued reasonable attorney's fees and costs
> through the date of acceptance of this offer, to be determined by separate agreement
> between the parties upon acceptance of this offer or in the event that an agreement is
> unable to be reached as to accrued fees and costs, accrued fees and costs will be
> determined as of the date of acceptance of the offer by the Court in accordance with
> Fed. R. Civ. P. 54 and Local Rule 4.18.

Specifically, Plaintiff seeks at a minimum[2] "all fees and costs through June 16, 2004," to wit:

| | |
|---|---|
| Attorney's Fees: | $49,816.00 |
| Attorney's Costs: | 1,512.99 |
| Expert's Fees: | 2,960.00 |
| Expert's Costs: | 71.94 |

**TOTAL**              **$54,360.93**

"plus an award for any and all fees, litigation expenses and costs incurred hereafter."

---

[1] This includes filing, as *four* separate exhibits of five pages each, the Application itself. Moreover, the Application does not comply with the margin requirements, and the individual pages are not numbered. Plaintiff offers no excuse or explanation for this bizarre and cumbersome practice, though it is likely due to unfamiliarity with Court's electronic filing system.

[2] Plaintiff notes that he also seeks "approximately $2,625.00 for the attorneys' and expert witnesses to prepare for and appear an [sic] evidentiary hearing on this matter, if necessary; and approximately $3,850.00 in Plaintiff's attorney time . . . and $1,850.00 in Plaintiff's expert's time . . . to prepare for and appear an [sic] evidentiary hearing, if necessary." Application at footnote 5. As the Court sees no reason to hold an evidentiary hearing on this matter, it is likewise spared having to decipher this incomprehensible request.

In Response, Defendant contends that Plaintiff is entitled only to *reasonable* attorney's fees and *certain* costs accrued up until January 5, 2004, the date of acceptance of the Offer, and no other recovery.  As viewed by the Association, Plaintiff is entitled to:

| | |
|---|---|
| Attorney's Fees: | $10,469.84 |
| Costs: | $195.00 |
| **TOTAL:** | $10,664.84. |

The Court has reviewed the Application and its exhibits, as well as the Response and the applicable law.  For the reasons set forth herein, the Court finds Plaintiff is entitled to an award of attorney's fees in the amount of $17,658.60, and costs in the amount of $ 195.00.

**Governing Law**

Although Plaintiff argues at length regarding the laudable purposes of the ADA, at this point in the litigation, the ADA is all but irrelevant.  As noted by Plaintiff, his entitlement to attorney's fees and costs at this point in *this* litigation arises from his acceptance of an Offer of Judgment, not from a Congressional grant.  In general, the law of contracts governs the construction and enforcement of settlement agreements. *Blum v. Morgan Guaranty Trust Co. of New York*, 709 F.2d 1463 (11th Cir.1983).  Thus, the Court looks to the language of the Offer, which all agree is "binding and enforceable" and "constitutes the whole agreement between the parties."  *See* Plaintiff's Application, citing, *inter alia, Hayes v. National Service Industries,* 196 F. 3d 1252 (11th Cir. 1999) and *Eaton v. Courtaulds of North America, Inc.,* 578 F. 2d 87 (5th Cir. 1978).

**Terms of the Offer**

The Offer, quoted above, provides that Defendant shall pay plaintiff for his accrued reasonable attorney's fees and costs through acceptance of the Offer.  The Offer was accepted by Plaintiff, in writing dated January 5, 2004 (Doc. No. 85, Exhibit 1).  Despite the clear language of Plaintiff's

acceptance letter, in support of his argument for a later effective date, Plaintiff takes the position that the Offer was later "modified" and Plaintiff accepted the "revised" Offer on June 15 and 16, 2004. This argument is unpersuasive.

As indicated by Plaintiff's notification to the Court (Doc. No. 37), Plaintiff's acceptance of Defendant's Offer was complete, unconditional, and unequivocal. Upon an unequivocal acceptance, a contract is formed. The fact that the contract was subsequently modified is of no moment. At no time did Plaintiff revoke his acceptance or tender a counter-offer; rather, certain terms of the Offer unrelated to the terms at issue were later clarified. An agreed-to modification to an existing contract does not revoke the contract. The parties contemplated by the clear language of the Offer that accrued reasonable attorney's fees and costs were payable through the date of acceptance of the Offer. As such, accrued reasonable attorney's fees and costs are payable only through January 5, 2004.

### Reasonable Fee

Plaintiff takes the position that "Defendant agreed to pay Plaintiff for all accrued attorney's fees and costs," meaning all fees and costs for the entire case, not just with respect to this Defendant. In support of this novel argument, Plaintiff notes that the Offer *"could* have said that 'Defendant shall pay plaintiff for his reasonable attorney's fee and costs *accrued with respect to Defendant International Beach Club only* through the date of acceptance of this offer . . .' However, it didn't." (emphasis original). Thus, argues Plaintiff, given the ordinary meaning of the words, Plaintiff is entitled to *all* fees and costs incurred by Plaintiff through the date of acceptance. Plaintiff is mistaken.

It is true that the terms of the attorney's fee provision of the Offer do not explicitly limit the fees and costs to those incurred with relation to this particular Defendant. Then again, the fees and costs are not explicitly limited to those incurred with relation to this *case.* Under Plaintiff's liberal

-5-

reasoning, one could interpret this provision, therefore, to provide that Defendant shall pay all Plaintiff's fees and costs from the dawn of time on any and all matters, even those unrelated to the case, as the provision is not expressly limited.  Such an interpretation would be ludicrous, of course, as it would ignore the clear intent of the parties and the pivotal word "reasonable."  The Offer can only be construed as providing for *reasonable* fees and costs, relating to the contracting Defendant only.

Plaintiff is also wrong in his premise that Defendant is otherwise obligated to pay all fees and costs, as determined by Plaintiff, in that this is a civil rights action and public policy was vindicated. As stated above, this action was resolved pursuant to an acceptance of a Rule 68 Offer of Judgment. Plaintiff expressly agreed to limit his potential fee and costs recovery by acceptance of that Offer. Having so contracted, Plaintiff's acceptance of these terms acts as a waiver of any greater right he might have enjoyed, had he prevailed at trial.  Such limiting agreements or waivers are enforceable and are not contrary to public policy in civil rights cases.  *See, generally, Puentes v. United Parcel Service, Inc*., 86 F.3d 196 (11th Cir. 1996) (When an employee knowingly and voluntarily releases an employer from liability for Title VII and § 1981 claims with a full understanding of the terms of the agreement, he is bound by that agreement); *Wichman v. County of Volusia*, 110 F. Supp. 2d 1354 (M.D. Fla. 2000) (citing *Puentes* in an ADA case, but finding that genuine issue of material fact as to whether waiver of claims against employer under ADA was knowing and voluntary precluded summary judgment); *Guerrero v. Cummings*, 70 F.3d 1111, 1113 (9th Cir. 1995) (policy underlying attorney's fees in civil rights actions does not preclude cutting off entitlement to such fees and costs at point at which offer of judgment is made and accepted).  For the same reason, Plaintiff is not entitled to additional fees for the time spent litigating the fee issue. *See Sussman v. Patterson*, 108

F.3d 1206, 1210-11 (10th Cir. 1997); *Guerrero*, 70 F.3d at 1113.[3]  Plaintiff, represented by counsel,

knowingly accepted the Offer which plainly limits his recovery to "accrued reasonable attorney's fees

and costs through the date of acceptance of this offer."  Having determined that this agreement means

accrued reasonable fees and costs only payable up through January 5, 2004, the Court turns to the

issue of whether the fees and costs claimed to be accrued within that time frame are reasonable.

### Calculating the Lodestar

"The starting point in fashioning an award of attorney's fees is to multiply the number of hours

reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir.

1994) (per curiam); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  A reasonable hourly

rate is the prevailing market rate in the relevant legal community for similar services by lawyers of

reasonably comparable skills, experience and reputation.  *Gaines v. Dougherty County Board of

Education*, 775 F.2d 1565, 1571 (11th Cir. 1985).

Factors to be considered when setting a fee include:  1) the time and labor required; 2) the

novelty and difficulty of the issues; 3) the skill required to perform the legal services properly; 4)

preclusion of other employment; 5) the customary fee; 6) whether the fee is fixed or contingent; 7)

time limitations imposed by the client or circumstances; 8) the amount involved and the results

obtained; 9) the experience, reputation and ability of the attorneys; 10) the undesirability of the case;

11) the nature and length of the professional relationship with the client; and 12) awards in similar

cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).  The going

---

[3]Interestingly, Plaintiff cites *Guerrero* for the proposition that any time spent litigating a fee application is compensable, but Plaintiff fails to note that the *Guerrero* court upheld the lower court's ruling that acceptance of an offer of judgment waived attorney's fees incurred after acceptance, including fees for litigating entitlement to attorney's fees under Section 1988. 70 F. 3d at 1113.

rate in the community is the most critical factor in setting the fee rate.  *Martin v. University of South Alabama*, 911 F.2d 604, 610 (11th Cir. 1990).

**Reasonable Hours**

Looking solely to time accrued up to January 5, 2004, the exhibits attached to the Application indicate the following hours expended by lead counsel Charouhis (WC), sixth year associate Barkus (LB), and paralegal Ward (BW):

WC–   56.60 hours

LB–   34.0 hours

BW–   1.7 hours

With the above principles in mind, a review of the itemization provided for these hours does not indicate that appropriate billing judgment was used.  Certain entries are either not properly chargeable to this party or not properly chargeable at all.

For example, on November 1, 2002, the date of the first entry on this matter (according to the bill submitted), paralegal Ward spent .30 hours on "preparation and opening of file for new matter." The next entry for this matter did not take place until over five months later, when, on April 8, 2003, WC apparently first met or spoke to Plaintiff "regarding ADA violation he encountered."  The Court finds it curious that paralegal Ward, without direction or apparent request from any attorney, was clairvoyant enough to identify a property that would be the subject of an ADA access complaint first made to Mr. Charouhis *more than five months later.*  No telephone calls from Plaintiff are noted (and the Court has every reason to believe that every moment of time that could possibly be claimed was, indeed, claimed), nor is there any other justification for paralegal Ward to "open a file" at this time. This unexplained entry is disallowed.

The Court notes also that many of the entries include time properly charged to prosecution of the case against co-Defendant.  In addition to obvious entries where a reduction of time should be made for drafting the complaint, reviewing Affidavits of Service and drafting Requests for Production of Documents for both defendants (see all April 2003 entries, generally, and September 3, 2003 entry), there are also entries specific to co-Defendant that are not chargeable to the prosecution of the case against the Association (*see,* for example, July 15, 2003, August 13, 2003, August 15, 2003, and September 19, 2003 entries regarding default against Schobert).

The bill shows three types of entries: 1) an entry for a task which pertained to both Defendants (such as drafting the Complaint); 2) entries which itemize many tasks in one entry; and 3) entries which relate solely to co-defendant.  With respect to entries for tasks which pertain to both Defendants, the Court deducts 10% of the time spent in these entries (4/8/2003, 4/15/2003, 4/25/2003, 4/28/2003, and on 9/3/2003), as time chargeable to co-Defendant.  As for entries which itemize many tasks in one entry, the Court deducts 50% of the time spent in entries of 7/1/2003 and 7/10/2003, as these entries included compensable time spent on matters pertaining to the Association, as well as identified tasks relating solely to co-Defendant.  With respect to entries which relate solely to co-Defendant, these entries (7/15/2003. 8/13/2003, 8/15/2003, 8/20/2003, and 11/19/2003) are stricken in their entirety.  It is not reasonable to expect a Defendant to reimburse Plaintiff for time spent solely on prosecuting the case against another.

The bill also includes time spent on travel (6/3/2003, and 12/25/2003)[4] and on research and drafting for an unfiled Amended Complaint (12/22/2003).  The Court finds these entries, to the extent

---

[4]Defendant notes that the 12/26/2004 entry may contain travel time, and urges a reduction for same.  Because the entry is not specific and includes time spent on a post-inspection conference, the Court cannot find that travel time was implicitly included.

they include such time, to be non-compensable.  Travel time is not properly visited on one's adversary, absent a showing of a lack of qualified local counsel.  Such a showing has not been made here.  Moreover, time spent on a pleading that was never filed does not advance the case and is not chargeable.  The Court deducts 2 hours travel time for entry 6/3/2003, strikes entry 12/25/2003, and deducts 2 hours for entry 12/22/2003.

Thus, in considering the *Johnson* factors, the Court finds that the time and labor reasonably involved for the prosecution of this action against the Association is:

WC    54.17 hours

LB    28.97 hours

BW    1.4 hours

Although the Association urges the Court to reduce the time further in view of the cut and paste nature of the action, given the numerous other similar lawsuits filed by Plaintiff and this counsel, the Court finds these hours to be reasonable, considering the tasks at hand.  Although the issues presented here were not novel or difficult (*Johnson* factors two and three), this does not mean that careful lawyering was therefore not required.  The lack of any unique issues means that counsel does not deserve a premium for his work; but counsel is nevertheless entitled to fair compensation for necessary tasks.

Factor four requires an evaluation of the preclusion of other employment.  Plaintiff's counsel would have this Court believe that he was precluded from taking on "other work from different clients" in order to prosecute this "novel and difficult contingent case."  The Court is unmoved.  Even the most cursory check of the docket in this district alone reveals that Mr. Charouhis was hardly idled by his duties in this case, representing this client (and, over the years, others) in numerous similar

cases.  Counsel himself boasts in his Application that he has litigated "in excess of 260 ADA cases."  There has been no showing of novelty or preclusion of other work in this case.

Factors five and six relate to the setting of a reasonable hourly fee, which is discussed below.  Factor seven is not relevant to this particular analysis, as there are no time limits imposed.  Factor eight -- the amounts involved and results obtained -- are subject to sharp debate.  Plaintiff contends that he received more than all of the relief provided by the ADA.  This contention is belied, however, by a comparison of the relief requested in the Complaint, which clearly contemplated changes to the guest rooms, and the relief ultimately provided by the Offer, which involved no such changes.  Plaintiff's results obtained were not *de minimis* however, and the fee ultimately awarded should reflect that.

As for factors nine, ten and eleven, as noted by Judge Presnell, counsel has developed quite the cottage industry in representing Plaintiff and others in ADA access suits.  *See Rodriguez v. Investco, L.L.C.*, Case No. 602-cv-916-Orl-31KRS ("Why would an individual like Plaintiff be in such a rush to file suit when only injunctive relief is available? Wouldn't conciliation and voluntary compliance be a more rational solution? Of course it would, but pre-suit settlements do not vest plaintiffs' counsel with an entitlement to attorney's fees . . . The current ADA lawsuit binge is, therefore, driven by economics -- that is, the economics of attorney's fees.")  *See also Brother v. Miami Hotel Investments, Ltd.*, 341 F. Supp. 2d 1230 (S.D. Fla. 2004) (noting the "fee generating mill").   While the goals of the ADA are noble and admirable, the Court sees no evidence that the goals of counsel are anywhere near as lofty.  Counsel does the Court (and himself) an injustice in pretending it is otherwise.

The remaining *Johnson* factors go to the setting of a reasonable rate, to which the Court now turns.

**Reasonable Rate**

Counsel contends that he has been practicing law in Florida for 19 years, presumably based in his Miami office, and, effective January 1, 2003, his rate was $360.00 an hour.[5]  Ms. Barkus is represented to be a sixth year attorney, billing at $210.00 an hour.  Paralegal Ward bills at $90 per hour, according to the bill.  Not surprisingly, counsel declares his rate to be "quite reasonable."  Counsel also offers the Affidavit of Daniel N. Brodersen, a local attorney, who opines that in his opinion, $385.00 an hour is reasonable for Charouhis, as are the $210.00 per hour for Barkus and $90.00 per hour for Ward.

As set forth above, the most critical factor in setting forth a reasonable rate is the going rate for similar services *in the relevant community.  Martin v. University of South Alabama*, 911 F.2d 604, 610 (11th Cir. 1990) (emphasis added).  Here, the relevant community is central Florida.  In this community, a rate of $385.00 per hour for a case that was never tried is well outside what the market will bear.  Indeed, counsel cites no authority where a Court in this division awarded him such a generous fee.[6]

_____

[5]Although counsel raised his rate to $385 per hour in 2004, the relevant time period at issue is largely prior to that time.

[6]Defendant illustrates this point in its papers; noting to several middle district cases where Mr. Charouhis was awarded considerably less.  *See* Defendant's Response at note 14, citing *Rodriguez v. Integra Resort Management, Inc*., Case No. 6:02-cv-917-ORL-31JGG (Order dated February 26, 2004 awarding Charouhis and Barkus $260 and $120 respectively);*Association for Disabled Americans, Inc. v. Naples Hotel Company*, Case No. 2:01-cv-601-FtM-29DNF (Order dated March 26, 2003 awarding Charouhis and Barkus $260 and $120 per hour); *See Association for Disabled Americans, Inc. v. FCH/DT Leasing II, L.L.C.*, Case No. 6:01-cv-377-ORL-28JGG (Order dated August 20, 2002 awarding Charouhis and Barkus $260 and $170).

By contrast, Defendant cites to two Affidavits previously filed by local attorneys Teresa A. Herrmann and K. Judith Lane.[7]  Ms. Herrmann avers that she is experienced in Title III, ADA cases and that she is familiar with Plaintiff and his counsel, having litigated against them.  Ms. Herrmann points to the "boiler plate" nature of such litigation as support for her opinion that a rate of $225 to $275 an hour is reasonable for Mr. Charouhis, with $145 to $165 an hour being reasonable for Ms. Barkus.  Similarly, Ms. Lane, a litigator experienced in ADA cases, opines that a reasonable fee for someone with 19 years experience in Central Florida ranges from $200 to $275, but in "boiler plate" cases, a reasonable fee is $125 to $175.  This Court is itself an expert on the question of reasonable hourly rates and may consider its own knowledge and experience concerning reasonable and proper fees.  *Loranger v. Stierheim*, 10 F.3d 776 (11th Cir. 1994).

Based on a review of the *Johnson* factors, and the evidence presented by the parties, the Court finds a reasonable rate for Mr. Charouhis in this case to be $260.00; with $120.00 per hour for Ms. Barkus and $70.00 per hour for paralegal Ward.  The Court notes that the case was not tried, and was settled relatively quickly with no significant motion practice.  Moreover, the Court takes judicial notice of the similarity of the instant complaint to other complaints filed by this Plaintiff in this district.  Indeed, after prosecuting hundreds of such cases, the filing of the complaint, followed by the typical inspection and settlement demand can be fairly viewed as routine for Charouhis.  Although Mr. Charouhis claims a unique expertise in this area of the law, the tasks at hand did not require any particular expertise beyond that utilized by any lawyer versed in commercial litigation.  As such, a rate of $260 is reasonable, as is $120 for the routine tasks undertaken by his associate.  *See Ursic v.*

---

[7]These Affidavits are in paper form in the Court file, as part of a voluminous composite exhibit to Doc. No. 59, filed prior to the advent of electronic filing.

*Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983) ("A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn.") The time spent by the paralegal was similarly routine and bordered on the merely clerical. While paralegals can (and do) perform many skilled tasks warranting rates of $90 and higher, the tasks performed by Ms. Ward (indexing pleadings and correspondence, telephoning counsel to schedule a meeting) involved no specialized skill or training and do not deserve to be compensated as such.

Thus, the lodestar is calculated (and the Court recommends an award for attorney's fees) as follows:

| Timekeeper | Reasonable hours | Reasonable rate | Total |
|---|---|---|---|
| William Charouhis | 54.17 | $260.00 | $14,084.20 |
| Lori Barkus | 28.97 | $120.00 | $3,476.40 |
| Paralegal Ward | 1.4 | $70.00 | $98.00 |
| **TOTAL** | | | **$17,658.60** |

**COSTS**

As set forth above, Plaintiff expressly agreed to the terms of the Offer of Judgment, which limited recovery to "accrued reasonable attorney's fees and costs through the date of acceptance of this offer, to be determined by separate agreement between the parties upon acceptance of this offer or in the event that an agreement is unable to be reached as to accrued fees and costs, accrued fees and costs will be determined as of the date of acceptance of the offer by the Court in accordance with Fed. R. Civ. P. 54 and Local Rule 4.18." "Costs" is not otherwise defined in the Offer.

Plaintiff argues that he is also entitled to "all costs," which he defines as costs and expenses allowed by 42 U.S.C. § 12055, which has been interpreted to include expert witness fees, as well as

-14-

other litigation expenses.  Defendant contends that the reference to Rule 54 clearly contemplates that only those costs recoverable pursuant to 28 U.S.C. § 1920 are included.

As the language of the Offer provides, if the parties cannot agree (which has occurred) the Court determines reasonable accrued fees and costs "in accordance with Rule 54."[8]  Rule 54 provides that "except when express provision thereof is made either in a statute of the United States or in these rules, costs. . . shall be allowed as of course to the prevailing party unless the court otherwise directs . . ."  Provision is made in 42 U.S.C. § 12205 for the court "in its discretion, [to] allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs. . ."  Although the parties see these provisions as dueling, the Court does not.  Rule 54 says, in essence, that taxable costs *shall* be allowed as a matter of course to the prevailing party *unless* a statute or rule says otherwise.  Section 12205 does not say otherwise, but says the Court *may* award costs, defined broadly in the case law.

Plaintiff contends that the Court *must* award an expert fee in that 42 U.S.C. § 12205 provides for the award of costs *and* litigation expenses, and cites *Marek v. Chesney,* 473 U.S. 1 (1985), *Holland v. Roeser,* 37 F.3d 501 (9th Cir. 1994), and *Cleary v. Martino,* 982 F. Supp. 639 (E.D. Wis. 1997), for the proposition that costs in an offer of judgment include those items of costs allowed by the relevant substantive statute.  By contrast, Defendant cites *Arcadian Fertilizer v. MPW Industrial Services, Inc.,* 249 F. 3d 1293 (11th Cir. 2001), which, although not an offer of judgment case, held that the costs referenced in Rule 54 are 28 U.S.C.A. § 1920 costs.  As the parties have agreed that costs are recoverable, and have agreed that the Court shall determine the amount "in accordance with Rule 54," the Court finds that the parties contemplated and agreed to Rule 54 costs only.

---

[8]The local rule referenced deals with the procedural issue of the time period for filing a separate petition for fees and costs and is not pertinent to the issue at hand.

While Section 12205 does, indeed, provide for a discretionary award of expert witness fees as a litigation expense, and the Supreme Court has interpreted "costs" to include those items in an appropriate case, here, the parties did not simply agree to "costs" but to costs determined by the Court "in accordance with Rule 54." Thus, the Offer at issue here differs from that in *Marek,* where Rule 54 was not mentioned in the offer. The circumstances surrounding the Offer also support a conclusion that Rule 54 costs were contemplated because, at the time the Offer was made, no expert witness fees had yet been incurred. The Court finds that "costs" as used in the Offer means those items set forth in Section 1920.[9]

Section 1920 provides that a court may tax as costs: (1) Fees of the clerk and marshal; (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and copies of papers necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title. 28 U.S.C.A. § 1920. In addition to the expert witness fees, which the Court recommends be disallowed as they are not a "cost" under this section, Plaintiff seeks $71.94 in expert witness costs (photographs), and $1,512.99 in various other costs, including photocopies, postage, computerized legal research, meals, tolls, mileage, rental car and airline charges, parking, and facsimile charges. As is clear, the vast majority of these charges are not "costs" within the meaning of Section 1920.

---

[9]Even if § 12205 were applicable, under these circumstances, the Court would decline to award expert witness fees for work performed after receiving the Offer.

-16-

The filing fee ($150) and service of process on this Defendant ($45) (page 21 of the Pre-bill worksheet which serves as Plaintiff's itemization of costs) are recoverable pursuant to § 1920(1). The only other claimed expense recoverable under § 1920 is for copies necessarily obtained for use in the case.

The party seeking recovery of photocopying costs must come forward with evidence showing the nature of the documents copied, including how they were used or intended to be used in the case. *Helms v. Wal-Mart Stores, Inc.,* 808 F.Supp. 1568, 1570 (N.D. Ga. 1992), *aff'd,* 998 F.2d 1023 (11th Cir. 1993); *Corsair Asset Management, Inc. v. Moskovitz,* 142 F.R.D. 347, 353 (N.D. Ga. 1992). Here, Plaintiff does not identify what photocopies were made – rather, Plaintiff simply lumps a total in a monthly count, at 25 cents per page. Although Plaintiff states in his brief that "[a]ll photocopy charges incurred in this matter were directly and reasonably related to the litigation and resolution of this cause" the Court cannot evaluate the accuracy of that statement without knowing what was copied. A prevailing party may not simply make unsubstantiated claims that such documents were necessary, since the prevailing party alone knows for what purpose the copies were made. *Corsair,* 142 F.R.D. at 353. This is especially true where, as here, Plaintiff has the burden of establishing that the costs are attributable to his claim against this Defendant, and not his claim against the co-defendant.

As Plaintiff has failed to properly itemize and support his claim for photocopying charges, the claim should be disallowed in its entirety. Costs in the total amount of $195 should be awarded.

### RECOMMENDATION

For the reasons set forth above, it is **respectfully recommended** that Plaintiff be awarded attorney's fees in the total amount of **$17,658.60** and costs in the total amount of **$195.00**.

-17-

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on April 28, 2005.

David A. Baker

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Courtroom Deputy